IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                   No.  CR 96-174 MV

MARTIN BARAJAS-CHAVEZ

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Reconsideration of Motion to Quash Arrest and Motion to Suppress Evidence ("Motion for Reconsideration"), filed December 1, 2000 **[Doc. No. 108]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Defendant's Motion for Reconsideration is not well-taken, and, accordingly, will be **DENIED**.

## BACKGROUND

Defendant was arrested on March 10, 1996, after entering a license and registration checkpoint on Interstate 40, near Gallup, New Mexico.  Subsequently, Defendant was indicted for illegally transporting two aliens and aiding and abetting, in violation of 8 U.S.C. §1324(a)(1)(A)(ii), 8 U.S.C. §1324(a)(1)(B)(ii) and 18 U.S.C. §2.

Prior to trial, Defendant filed a motion to quash arrest and motion to suppress evidence ("Defendant's First Motion") on the grounds that "both the stop and arrest of Defendant were illegal, that all evidence seized was as a result of the exploitation of the illegality, and that the evidence

should therefore be excluded." Def.'s Mot. to Suppress, filed June 18, 1996. On July 5, 1996, the Court held a hearing on Defendant's First Motion.

At the motion hearing, Immigration and Naturalization Service ("INS") Special Agent Joseph Garcia testified that the roadblock at which Defendant was arrested was initiated by the New Mexico State Police ("NMSP") for the primary purpose of checking drivers' licenses, vehicle registrations and insurance, and that INS agents had been invited to attend the roadblock. Mot. Tr. at 57, 64-65, 74. Agent Garcia also testified that he was working at the state police roadblock as:

> part of a joint operation that the State of Colorado and New Mexico State Police agencies had with immigration. It was an operation named Mountain Pass, and the reason for that being that the intelligence had been gathered with that with other operations along the border, such as Hold the Line and Gatekeeper. It was drawing a lot of smuggling through routes further north related to immigration.

Id. at 52. Agent Garcia further testified that on the night of Defendant's arrest, the INS agents working at the roadblock apprehended approximately sixty illegal aliens. Id. at 53.

Also at the motion hearing, NMSP Captain Michael Francis testified that the primary purpose of the roadblock, which he had scheduled, "was to check drivers' licenses and registrations." Id. at 102. Captain Francis further testified that he had established the guidelines for the roadblock, which were in compliance with NMSP departmental mandates, including the use of posted warning signs stating the purpose of the roadblock, red lights and emergency equipment, and a stop sign to warn oncoming traffic of the roadblock. Id. at 102-04, 109. In addition, Captain Francis testified that, in his experience, "[i]n that area of New Mexico, when [the police] establish those types of road blocks, usually about 30 percent of the drivers coming through are cited for either suspended, revoked, no driver's license, no registration, or expired registration, or no insurance." Id. at 104. For the night on which Defendant was arrested, Captain Francis stated that this statistic "was probably fairly close."

-2-

*Id.* Captain Francis also indicated that there were no K-9 units available at the roadblock. *Id.* at 110. Finally, Captain Francis stated that the NMSP would have established the roadblock regardless of whether INS agents were present. *Id.* at 104.

After Defendant's attorney's argument on the motion, the Government's attorney asked whether the Court intended to go into whether or not the establishment of the roadblock was pretextual. *Id.* at 117. The Court responded that this issue was "not something that's been raised, and Mr. Lopez didn't argue it at this point, so, no." *Id.* The Court further expressly stated that it was not "dealing with the legality of the roadblock, as it appears that that is not a legal issue that has been raised." *Id.* The Court ultimately denied Defendant's First Motion, finding that the testimony of Agent Garcia and Captain Francis was credible and persuasive regarding the issue of probable cause to arrest Defendant.

The Court then conducted a jury trial from July 26, 1996 through July 29, 1996. At the trial, Agent Garcia again testified that he had been invited to participate in the roadblock for the purpose of handling any alien smuggling, and again discussed Operation Mountain Pass, which was designed to "intercept and apprehend illegal aliens and smuggling of aliens through that part of the country." Trial Tr. at 42. In addition, Agent Garcia testified that the NMSP purpose of the roadblock was "to look for DWIs, which is driving while – under the influence; license, registration checks and other contraband that they would have jurisdiction over." *Id.* at 43.

At the close of the Government's case-in-chief and at the close of all of the evidence, Defendant moved for a judgment of acquittal on the grounds that there was insufficient evidence to support the charge of transporting illegal aliens. The Court took the motion under advisement and submitted the case to the jury. The jury convicted Defendant of transporting illegal aliens in violation

of 8 U.S.C. §1324.  The Court, however, thereafter granted Defendant's motion for a judgment of acquittal, holding that the Government had failed to prove that the transportation was "in furtherance" of the aliens' violation of the law.

The Government appealed the judgment of acquittal, and a panel of the Tenth Circuit Court of Appeals affirmed.  The Government then petitioned for rehearing *en banc*, which petition was granted.  On January 7, 1999, the Tenth Circuit entered an *en banc* opinion reversing the judgment and instructing this Court to reinstate the jury's verdicts of guilty.  *See United States v. Barajas-Chavez*, 162 F.3d 1285 (10th Cir. 1999) (*en banc*).

Defendant moved for a stay of mandate in January 1999.  The Tenth Circuit granted the motion, and stayed issuance of the mandate until April 7, 1999.  On October 4, 1999, the United States Supreme Court denied Defendant's petition for a writ of certiorari.  Thereafter, on December 5, 2000, the Court filed a Memorandum Opinion and Order reinstating the jury's verdicts.  On December 1, 2000, Defendant filed the instant Motion for Reconsideration.

## DISCUSSION

Defendant asks the Court to reconsider the denial of Defendant's First Motion.  In support of this request, Defendant argues that the Government presented testimony at trial that was inconsistent with the testimony presented at the motion hearing, and that the testimony offered at trial demonstrates that the roadblock at which Defendant was arrested was improper under the Supreme Court's decision in *City of Indianapolis v. Edmond*, 531 U.S. 31 (2000).  *Edmond* was decided after this Court ruled on Defendant's First Motion.  The Government opposes Defendant's request.

-4-

In *Edmond*, the Supreme Court held that a checkpoint program with the primary purpose of interdicting illegal narcotics violated the Fourth Amendment.  In explaining this holding, the Supreme Court stated:

> We have never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing. . . . [E]ach of the checkpoint programs that we have approved was designed primarily to serve purposes closely related to the problems of policing the border or the necessity of ensuring roadway safety.  Because the primary purpose of the Indianapolis narcotics checkpoint program is to uncover evidence of ordinary criminal wrongdoing, the program contravenes the Fourth Amendment.

531 U.S. at 41-42 (citations omitted).

In *Edmond,* the Supreme Court reiterated its prior decisions in *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976) and *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990), upholding "brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens, and at a sobriety checkpoint aimed at removing drunk drivers from the road," respectively.  *Id.* at 37 (citations omitted).  The Supreme Court also favorably cited *Delaware v. Prouse*, 440 U.S. 648 (1979), where it had "suggested that a similar type of roadblock with the purpose of verifying drivers' licenses and vehicle registrations would be permissible."  *Edmond*, 531 U.S. at 37-38.  The *Edmond* Court explained that, in *Prouse,* the Supreme Court stated that "'[q]uestioning of all oncoming traffic at roadblock-type stops' would be a lawful means of serving [the] interest in highway safety, . . . [and] further indicated . . . that [the Court] considered the purposes of such a hypothetical roadblock to be distinct from a general purpose of investigating crime."  *Id.* at 39 (citations omitted).

Nothing in the *Edmond* decision suggests that the Supreme Court intended to overturn prior law.  Rather, *Edmond* merely clarifies that the Supreme Court's checkpoint cases "have recognized

only limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion." *Id.* at 41.  Moreover, *Edmond* makes clear that this line of cases *never included* "checkpoint program[s] whose primary purpose was to detect evidence of ordinary criminal wrongdoing."  *Id.*

Accordingly, *Edmond* cannot provide a new basis for Defendant to challenge the legality of the roadblock at which he was arrested.  Any argument that the roadblock contravened the Fourth Amendment was available to Defendant when he filed Defendant's First Motion.  Defendant chose not to raise any such issue, as the Court noted at the motion hearing.  Defendant's failure to raise the issue of the legality of the roadblock before trial constitutes a waiver under Rule 12(f) of the Federal Rules of Criminal Procedure. *See United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991), *cert. denied sub. nom Rison v. United States*, 502 U.S. 1118 (1992) (waiver provision applies not only to failure to make pretrial motion, but also to failure to include a particular argument in pretrial motion).  As Defendant has failed to allege sufficient cause for his failure to raise the issue of the legality of the roadblock prior to trial, and as the record reveals that Defendant lacked no opportunity to timely raise this issue, he is not entitled to relief from his waiver.  *See United States v. Coyote*, 963 F.2d 1328, 1332 (10th Cir. 1992) (where defendant lacked no opportunity to timely make motion to suppress, trial court did not abuse discretion in concluding that defendant waived motion).

Moreover, the testimony first elicited at the trial does not establish that, under *Edmond,* the roadblock at which Defendant was arrested falls into the category of checkpoint programs that contravene the Fourth Amendment.  Defendant argues that Agent Garcia's testimony at trial was inconsistent with his testimony at the motion hearing.  Defendant contends that Agent Garcia's trial testimony revealed that the primary purpose of the roadblock was "a roadblock 'initiated' by the INS

while 'working an operation' called Operation Mountain Pass 'to intercept and apprehend illegal aliens and smuggling of aliens through that part of the country.'"  Def.'s Memo. in Support at 4.  In addition, Defendant focuses on the words "and other contraband that they would have jurisdiction over," which Agent Garcia used in his description of the purpose of the NMSP roadblock.  These words, Defendant claims, prove that the NMSP's primary purpose was in fact to look for contraband, "precisely the primary purpose proscribed by [*Edmond*]."  *Id.* at 5.   Accordingly, Defendant concludes that the "roadblock in this case violated the Fourth Amendment because it was initiated to intercept and apprehend illegal aliens or because it 'was a pretext whereby evidence of narcotics violation might be uncovered in "plain view" in the course of a check for driver's licenses.'"  *Id.* at 5 (citations omitted).

As an initial matter, this Court does not agree that Agent Garcia's testimony at trial was inconsistent with his testimony at the motion hearing.  Agent Garcia made clear both at the motion hearing and at the trial that he was working on Operation Mountain Pass, and that the INS presence at the roadblock was for the express purpose of dealing with alien smuggling.  Thus, Defendant was fully aware of this at the motion stage of the case, and Agent Garcia's trial testimony shed no more light on the INS presence at the roadblock than did his testimony at the motion hearing.  As *Edmond* did not change the law with regard to checkpoints designed to deal with border crossing issues (indeed, Defendant does not contend that it did), his argument on this ground must fail.

Similarly, Agent Garcia consistently testified, both at the motion hearing and at the trial, that the roadblock was set up by the NMSP, that the primary purpose of the roadblock was to conduct license and registration checks, and that the INS had been invited to participate in the roadblock.  The Court finds unavailing Defendant's argument that the inclusion of the words "other contraband" in

Agent Garcia's trial testimony amounted to an admission that the primary purpose of the roadblock was the sort of generalized investigation of crime prohibited under the Supreme Court's line of checkpoint cases.  The totality of Agent Garcia's trial testimony is consistent with his prior testimony and that of Captain Francis, and thus provided Defendant with no new evidence of which he was not aware at the time of Defendant's First Motion.

The witnesses' testimony at the motion hearing and at trial sufficiently establishes that the roadblock at issue was set up by the NMSP for the primary purpose of checking licenses and registrations, and that the INS agents were invited to participate in the roadblock.  The roadblock thus falls within the *Prouse* exception to the prohibition on general purpose roadblocks carved out by the Supreme Court in *Edmond*.  The governmental interest here is highway safety, and the roadblock, at which all oncoming traffic was stopped for questioning, was a "lawful means of serving this interest in highway safety."  *Edmond*, 531 U.S. at 39.  As such, the purposes of the roadblock were "distinct from a general purpose of investigating crime," and, accordingly, were not constitutionally improper.  *Id.* at 39.  Defendant's argument that the *Edmond* decision provides a basis for reconsideration of his motion to suppress the evidence obtained as a result of his stop and arrest at the roadblock thus must fail.

## **CONCLUSION**

Defendant has not established either that new, inconsistent testimony was presented at trial, or that the *Edmond* decision renders the roadblock at which Defendant was arrested constitutionally improper.  Accordingly, Defendant has failed to present this Court with a proper basis for reconsideration of the denial of Defendant's First Motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Reconsideration of Motion to Quash Arrest and Motion to Suppress Evidence **[Doc. No. 108]** is **DENIED**.

**DATED** this 13th day of December, 2002.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

<u>Attorney for Plaintiffs</u>:
Kelly H. Burnham, Esq.

<u>Attorney for Defendants</u>:
Floyd W. Lopez, Esq.